**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Justin E.,[1]

          Plaintiff,

v.

Frank Bisignano, Commissioner of
Social Security,

          Defendant.

Case No. 25-CV-0058 (JWB/JFD)

**REPORT AND**
**RECOMMENDATION**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Justin E. seeks judicial review of the Defendant Commissioner of Social Security's final decision denying his application for Supplemental Security Income ("SSI"). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Before the Court are Plaintiff's Brief (Dkt. No. 16), Defendant's Brief (Dkt. No. 18), and Plaintiff's Reply Brief (Dkt. No. 19). Plaintiff argues that the Social Security Administrative Law Judge ("ALJ") who authored the final decision erred "by playing doctor instead of developing the record." (Pl.'s Br. at 11.) Defendant responds that the ALJ properly determined that the existing record was sufficient and no additional neuropsychological testing was necessary. As set forth below,

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

1

the Court finds that the ALJ correctly determined that the record did not need further development and recommends that the decision of the Commissioner be affirmed.

## I.     Background

### A.     Process for Applying for Disability Benefits

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance Program under Title II of the Social Security Act and the Supplemental Security Income Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Only SSI benefits are at issue in this case. The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid social security taxes, who demonstrate financial need. *Id.*; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

For SSI purposes, "disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

To receive SSI, a claimant must submit an application to the SSA, which grants or denies the application according to the SSA's regulations. *See* 20 C.F.R. § 416.1400

(outlining SSI administrative process under Title XVI). There are four levels of administrative review. At the "initial determination" stage, the SSA decides whether the claimant is eligible for benefits, and if the claimant is unsuccessful, the claimant may file a request for reconsideration. 20 C.F.R. § 416.1400(a)(1), (2). If the application is denied at the reconsideration level, the claimant may request a hearing before an ALJ. 20 C.F.R. § 416.1400(a)(3).

The ALJ determines whether a person is disabled using a five-step sequential analysis described in 20 C.F.R. § 416.920. For the first four steps, the claimant bears the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Steps one through four ask "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, [and] (4) whether claimant has the residual functional capacity to perform past relevant work activity." *See Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)). If the claimant successfully meets the burden of proof for the first four steps, the Commissioner bears the burden at step five to establish that the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v).

If the claimant is not satisfied with the ALJ's decision, the next step is to ask for review by the Appeals Council. 20 C.F.R. § 416.1400(a)(4). The Appeals Council's decision is the "final decision" of the Commissioner, which may then be appealed to a federal district court. 20 C.F.R. § 416.1400(a)(5).

## B.    Relevant Medical Evidence

Plaintiff fell off his front steps on July 23, 2022, and suffered a significant traumatic brain injury ("TBI"). (*See* Soc. Sec. Admin. R. (hereinafter "R.") 1265.)[2] Plaintiff also has diagnoses of bipolar disorder, schizoaffective disorder, depressive disorder, anxiety disorder, and a history of alcohol use. (R. 12, 1266.)

On January 25, 2023, Plaintiff attended a psychological consultation and examination with Monique Bourdeaux, Psy.D., L.P., for the purpose of assessing his daily functioning. (R. 1265.) Dr. Bourdeaux administered the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") and Wechsler Memory Scale-Fourth Edition ("WMS-IV") tests. The WAIS-IV test yielded a full-scale IQ of 86, which was "in the low average range of intellectual functioning." (R. 1268.) Most of Plaintiff's other scores were also in the low average range. (R. 1268.) The WMS-IV results were similar, with scores between the low average and average range. (R. 1269.) Dr. Bourdeaux concluded that Plaintiff could understand, remember, and follow directions; was moderately able to sustain attention, concentration, persistence, and pace; could respond appropriately to others; and was moderately able to tolerate mental stressors in an entry-level workplace. (R. 1269.)

On February 13, 2023, speech language pathologist Kelsey Kuhlman administered the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS") test to Plaintiff. (R. 1277.) This test was developed originally to assess dementia but is also

---

[2] The Social Security administrative record is filed at Docket No. 11. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers.

4

used for closed head injuries. (R. 1277.) The test measures cognitive decline or improvement over five domains, including immediate memory and delayed memory. (R. 1277.) Plaintiff scored extremely low in immediate memory, in two of four components of delayed memory (list recall and figure recall), and in one component of language (semantic fluency). (R. 1277.) These results placed Plaintiff in the second percentile of similarly aged adults. (R. 1278.) Interpreting the test results, Kuhlman found that Plaintiff had moderately to severely impaired cognitive-linguistic deficits, moderately impaired verbal expression, severely impaired immediate memory, moderately impaired delayed memory, moderately impaired attention, and moderately impaired visuospatial/construction skills. (R. 1278.)

At the initial disability determination review stage, state-agency consultant Stuart Waltonen, Ph.D., L.P. R., considered Plaintiff's mental medical records and made administrative findings. (R. 93–95, 97–98.) In the area of memory and understanding, Dr. Waltonen found Plaintiff moderately limited in his ability to understand and remember detailed instructions, but not significantly limited in understanding and remembering very short and simple instructions or in remembering locations and work-like procedures. (R. 97.) According to Dr. Waltonen, Plaintiff had adequate mental capacity to concentrate on, understand, and remember routine, repetitive instructions, but would be markedly impaired for detailed or complex/technical instructions. (R. 97.) At the reconsideration level of review, Marci Mylan, Ph.D., L.P. R., made essentially the same findings as Dr. Waltonen. (R. 110–11.)

### C.    Plaintiff's Application for Benefits

Plaintiff filed his application for SSI on August 30, 2022. (R. 10.) The application was denied at the initial and reconsideration stages of administrative review, and Plaintiff requested a hearing before an ALJ. The ALJ convened a hearing on January 12, 2024. (R. 37.) Plaintiff, medical expert Dr. Tonya Porchia, and vocational expert David Salewsky testified. (R. 37–38.)

Plaintiff testified that since his TBI, he has had memory problems, trouble following a train of thought, trouble finding words, slowness in accomplishing tasks, balance problems, and dizziness. (R. 43–44.) His mental health diagnoses were bipolar disorder, schizoaffective disorder, alcohol use disorder, and depression. (R. 45–46.)

During Dr. Porchia's testimony, the ALJ asked the doctor if Plaintiff met or equaled any of the listings. (R. 48.) Dr. Porchia replied, "It's really a challenge with this case," and then contrasted the RBANS, WAIS-IV, and WMS-IV test results. (R. 48–49.) Dr. Porchia observed that Plaintiff scored in the extremely low range for concentration and memory on the RBANS test. (R. 49.) She described this assessment as only a "brief measure," however, which is typically used to measure the decline in patients with dementia, and "not a test that a psychologist or a neuropsychologist would rely on for accurate results in regard[] to functioning." (R. 49, 51.) Dr. Porchia also testified about Plaintiff's IQ and memory scores on the WAIS-IV and WMS-IV tests administered by Dr. Bourdeaux. (R. 49, 51.) Dr. Porchia testified those tests provided a "more accurate result" and were "a good thorough and accurate assessment of a patient's cognitive and memory functioning." (R. 49, 51.) On those assessments, Plaintiff's IQ scores were in the low average to average range. (R. 49.)

6

In addition, according to Dr. Porchia, Plaintiff's low average to average score on the WMS-IV test demonstrated that Plaintiff was "still functioning relatively well." (R. 49.)

Considering all of the test results, Dr. Porchia testified that she did not see anything that would provide evidence of a neurocognitive disorder that would meet or equal a listing. (R. 49.) However, Dr. Porchia then said that additional testing "might be helpful." (R. 49.) To provide full context, Dr. Porchia's testimony reads:

> I'm not seeing anything in 4F or 5F that would provide evidence of a neurocognitive disorder that would meet or equal the listings. Judge, it would be better for the claimant to undergo a more detailed neuropsychological full battery of testing. That might be helpful in the case. But what we have so far does not show evidence that the claimant would meet or equal the listing.

(R. 49.)

The ALJ next asked Dr. Porchia to rate Plaintiff's abilities in the four areas of mental functioning needed for work, which are known as the "paragraph B" criteria. (R. 49.) Dr. Porchia testified that Plaintiff had a mild limitation in understanding, remembering, or applying information; no difficulty to mild difficulty in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or maintaining oneself. (R. 49–50.) Dr. Porchia also recommended a slow-paced work setting to account for Plaintiff's TBI, bipolar disorder, and premorbid history of alcohol use. (R. 50.)

During Plaintiff's attorney's opportunity to question Dr. Porchia, the attorney said, "All right and again, your opinion on this case was further neuropsychological testing may be warranted," to which Dr. Porchia replied, "Correct." (R. 51.) Plaintiff's attorney followed up, "Or would be a better option," to which Dr. Porchia said, "Yes." (R. 51–52.)

On February 26, 2024, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act between the date of the application (August 30, 2022), and the date of the decision. (R. 7–23.) Following the five-step sequential analysis described in 20 C.F.R. § 416.920, the ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity since August 30, 2022. (R. 12.) At the second step, the ALJ found Plaintiff had the following severe impairments: TBI with subarachnoid, left subdural, and intraventricular hemorrhage, with some residual cognitive, fine and gross motor, and gait deficits; bipolar disorder; schizoaffective disorder; major depressive disorder; and anxiety disorder. (R. 12.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 13.) The ALJ specifically considered the RBANS, WAIS-IV, and WMS-IV results in the discussion of Plaintiff's ability to understand, remember, or apply information. (R. 15.) The ALJ recalled that the RBANS test "showed extremely low scores in immediate memory, semantic fluency, and delayed recall." (R. 15.) The WMS-IV test, on the other hand, "showed immediate and delayed memory scores both in the low average range, with visual memory in the average range, and auditory and visual working memory in the low average range," and the WAIS-IV test resulted in "a full-scale IQ score of 86, in the low average range, with verbal comprehension, working memory, and processing speed scores in the low average range, and a perceptual reasoning score in the average range." (R. 15.) The ALJ found persuasive Dr. Porchia's testimony that "the WAIS-IV and WMS-IV were more thorough and accurate

8

assessments of the claimant's cognitive and memory functioning than the RBANS" and that "the RBANS is merely a very brief assessment tool, which would not be relied upon by a psychologist or neuropsychologist to determine an individual's overall cognitive functioning relative to a traumatic brain injury." (R. 15.)

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. § 416.945(a)(1). As part of this assessment, the ALJ reiterated that the "more thorough" WMS-IV and WAIS-IV testing showed low average to average scores in immediate and delayed memory, and auditory, visual, and visual working memory. (R. 20.)

The ALJ considered Dr. Porchia's testimony that additional neuropsychological testing might be helpful, but found additional testing was not warranted. (R. 21.) In explaining why, the ALJ rejected Plaintiff's position that the RBANS test established Plaintiff's baseline functioning, finding that the WAIS-IV and WMS-IV tests were more thorough and accurate. (R. 21.) The ALJ pointed out that Plaintiff did not return for additional speech language therapy after the RBANS test, even though continued therapy had been recommended. (R. 21.) Further, Plaintiff's therapy goals involving moderately complex, complex, and novel cognitive tasks were not changed after the RBANS test to, for example, only simple tasks. (R. 21.) The ALJ also observed that the record did not contain a referral for more neuropsychological testing. (R. 21.) Finally, the ALJ noted, the RBANS test was administered in February 2023 by a speech language pathologist as part of Plaintiff's speech therapy, but Plaintiff did not return for additional speech therapy after

9

that date. (R. 15, 21.) Based on the above reasoning, the AJ concluded that additional testing via a second consultative examination was not warranted. (R. 21.)

Ultimately, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except [t]he claimant has the residual functional capacity to perform less than full range of light work except with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing as that term is defined in the Selected Characteristics of Occupations (SCO); frequent stooping, kneeling, crouching, and crawling; no work at unprotected heights or around moving mechanical parts; no commercial driving; and simple, routine, and repetitive work, but no assembly line work or other similar work requiring an unvarying fast pace.

(R. 18.)

Proceeding to step four in the sequential evaluation, the ALJ determined that Plaintiff could not perform his past relevant work. (R. 22.) The analysis therefore advanced to the fifth and final step, where the ALJ concluded that Plaintiff could work as a cleaner, merchandise marker, or inspector. (R. 23.) Therefore, Plaintiff was not disabled as defined by the Social Security Act for the time period between August 20, 2022, and February 26, 2024. (R. 23.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.   Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision involved an error of law, *Nash v. Comm'r, Soc.*

*Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

An error of law may be a procedural error, the application of the wrong legal standard, or an improper application of law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). An ALJ's failure to comply with applicable SSA regulations is a legal error. *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020). Such an error is not harmless if the Court cannot determine whether the ALJ would have made the same decision even if the ALJ had complied with the regulations or correctly applied the law. *Id.* at 1069–70 (citations omitted).

## III.   Discussion

Plaintiff argues that the ALJ "erred as a matter of law by playing doctor instead of developing the record." (Pl.'s Br. at 11.) In particular, Plaintiff contends that the record

contains evidence of conflicting test results—the RBANS from Kuhlman and the WAIS-IV and WMS-IV from Dr. Bourdeaux—and the ALJ should have followed Dr. Porchia's recommendation to order additional neuropsychological testing. (Pl.'s Br. at 13.)

When an ALJ cannot make a determination of disability because the claimant's record contains incomplete or inconsistent evidence, the ALJ may need to develop the record further. 20 C.F.R. § 416.920b(b). If the evidence is inconsistent, "we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." *Id.* § 416.920b(b)(1). "If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency." *Id.* § 416.920b(b)(2). The ALJ may recontact a medical source, ask for additional evidence or information, or ask the claimant to undergo a consultative examination. *Id.* § 416.920b(b)(2)(i)–(iv). It is the ALJ's duty to resolve inconsistent evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

Here, the ALJ did not find the evidence of record insufficient, and the ALJ addressed and resolved the inconsistent evidence. The ALJ explained why he found persuasive the state-agency consultants' opinions of no more than moderate "paragraph B" restrictions and Dr. Porchia's work-pace restriction. (R. 17.) The ALJ also explained why he found that Dr. Porchia's opinion supported a moderate limitation in the area of concentrating, persisting, and maintaining pace, rather than the mild limitation she recommended. (R. 17–18.) Similarly, the ALJ explained why he rated Plaintiff's ability to understand, remember,

or apply information as moderate, rather than mild, as Dr. Porchia opined. (R. 18.) Notably, these last two findings were to Plaintiff's benefit.

The ALJ expressly addressed Dr. Porchia's statement that additional testing might be helpful and explained why the record was not insufficient. First, as Dr. Porchia testified, the WAIS-IV and WMS-IV tests provided a good, thorough, and accurate assessment of Plaintiff's memory and cognitive functioning. (R. 15, 21.) Incidentally, those tests were administered by a consulting examiner at the SSA's request. (*See* R. 15.) Second, Dr. Porchia did not testify she was unable to determine from the existing record whether Plaintiff met or equaled a listing or whether the "paragraph B" criteria were satisfied. Rather, Dr. Porchia testified that Plaintiff did not meet or equal a listing and that Plaintiff's "paragraph B" limitations were mild. Her testimony that arriving at these conclusions was a "challenge" or that more testing might be "helpful" or "better" does not nullify the testimony.

The ALJ also noted that, in contravention to Dr. Porchia's remark that additional neuropsychological testing might be helpful, the record did not document a referral for a more thorough neuropsychological assessment. (R. 21.) Nor did Plaintiff follow up on a recommendation for further assessment of cognitive linguistic deficits or attend additional speech therapy. (R. 21.) These facts supported the ALJ's decision not to order additional testing.

In sum, Plaintiff's medical records, Plaintiff's testimony and statements, the prior administrative medical findings, the consultative examination results, and Dr. Porchia's testimony provided the ALJ with sufficient evidence to make a determination of disability.

The ALJ also resolved inconsistencies between the RBANS and WAIS-IV and WMS-IV testing. The ALJ credited Dr. Porchia's testimony that the latter two tests were more indicative of Plaintiff's cognitive and memory functioning, as they were more thorough tests than the RBANS test. (R. 21.) The ALJ pointed out that the RBANS "is merely a very brief assessment tool, which would not be relied upon by a psychologist or neuropsychologist to determine an individual's overall cognitive functioning relative to a traumatic brain injury." (R. 15.) The RBANS test was administered as part of Plaintiff's speech language therapy, and the ALJ pointed out that Plaintiff had steadily improved in speech therapy goals such as moderately complex recall tasks, complex reading tasks, and complex word finding tasks. (R. 15–16.) The ALJ found Plaintiff's improvement consistent with a moderate limitation in understanding, remembering, or applying information, which was concordant with the WAIS-IV and WMS-IV test results. (R. 15–16.)

The Court turns now to some of Plaintiff's other, specific arguments. Plaintiff suggests that his mental health could have declined between the WAIS-IV and WMS-IV tests on January 25, 2023, and the RBANS test on February 13, 2023. (Pl.'s Br. at 15.) However, Plaintiff's representative reported no such decline at the reconsideration stage of administrative review (R. 107), and Plaintiff has identified no records other than the RBANS test to support such a decline.

Plaintiff next observes that Drs. Bourdeaux and Waltonen did not have the RBANS test results when they reached their medical opinions. (Pl.'s Br. at 16.) Similarly, Plaintiff notes that Dr. Mylan did not mention the RBANS test in her findings, although Plaintiff acknowledges that the test results were in his SSA file by the time of her review. (Pl.'s Br.

14

at 16.) The timing of the consultative examination, RBANS testing, and initial administrative review is not in and of itself a basis for reversal. The dates of these events were in the record before the ALJ, and Plaintiff has not shown the ALJ would have reached a different result if he had explicitly considered the sequence of events. Moreover, given the ALJ's characterization of the RBANS test as a brief assessment tool on which a psychologist or neuropsychologist would not rely to determine functioning, it is not likely the ALJ would have found an opinion less persuasive because it was issued before the RBANS test was administered.

Finally, Plaintiff contends this case is like *Kaylan F. v. Kijakazi*, No. 22-CV-2148 (DLM), 2023 WL 4407485 (D. Minn. July 7, 2023), where the court found the record was not sufficiently developed to support the ALJ's conclusions about the plaintiff's limitations in concentration, persistence, or ability to maintain pace. *Id.* at *4. The ALJ found those abilities were moderately limited, despite the medical expert's testimony that "he could not say for sure on this record" whether Plaintiff would have limitations in concentration, persistence, or pace. *Id.* at *3. The medical expert testified that "he did not get a good sense from the record about the severity of compulsive behaviors, things like showering and handwashing" and essentially "admitted his opinion on this subject was based on insufficient evidence." *Id.* at *4 (cleaned up).

Here, by contrast, Dr. Porchia did not say there was insufficient evidence or that she was uncertain about her conclusions. Rather, Dr. Porchia gave concrete opinions on whether Plaintiff met or equaled a listing and whether any of the "paragraph B" criteria were satisfied. The ALJ explained in the written decision why additional testing was not

necessary and why the existing evidence in the record was sufficient. The ALJ also resolved

the inconsistencies between the test results. Dr. Porchia's testimony that additional tests

might be helpful and that reconciling inconsistent evidence in the record was challenging

does not necessarily mean the record was insufficient or that inconsistencies could not be

reconciled.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.  The relief requested in Plaintiff's Brief (Dkt. No. 16) be **DENIED**;

2.  The relief requested in Defendant's Brief (Dkt. No. 12) be **GRANTED**; and

3.  **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: January 20, 2026                     *s/ John F. Docherty*
                                           JOHN F. DOCHERTY
                                           United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

16